UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GUY SNODGRASS<br>c/o Mark S. Zaid, P.C.<br>1250 Connecticut Avenue, N.W.<br>Suite 700<br>Washington, D.C. 20036<br><br>    Plaintiff,<br><br>    v.<br><br>DEPARTMENT OF DEFENSE<br>1000 Defense Pentagon<br>Washington, D.C. 20301-1000<br><br>    Defendant. | *<br>*<br>*<br>*<br>*<br>*<br>*   Civil Action No: 19-2607<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

# **COMPLAINT**

Plaintiff Guy Snodgrass ("Snodgrass") brings this action against defendant Department of Defense ("DoD") for injunctive and declaratory relief pursuant to the Administrative Procedure Act, 5 U.S.C. § 702 et seq., the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and the First Amendment to the Constitution of the United States.

DoD has unlawfully imposed a prior restraint upon Snodgrass by obstructing and infringing on his right to publish unclassified information in his manuscript entitled, "*Holding the Line: Inside Trump's Pentagon With Secretary Mattis*" (Sentinel, October 29, 2019)("Manuscript"). It has unreasonably delayed the formal completion of the classification review, particularly in order to benefit – and with the acquiescence, if not complicity of – former Secretary of Defense James Mattis ("SecDef Mattis"), whose own book not coincidently will be published on September 3, 2019.

But more importantly, DoD has unlawfully demanded the redaction of wholesale chapters that it has acknowledged are unclassified. DoD has also implicitly threatened

Snodgrass with potential legal and/or administrative retaliation were he to violate alleged loyalty oaths sought by SecDef Mattis that have absolutely no application or lawful effect on him.

Snodgrass's Manuscript was scheduled for publication on October 29, 2019, but now that date will have to be pushed back because DoD deliberately failed to fulfill its lawful obligations and continued to impose inappropriate and legally inapplicable requirements upon Snodgrass. Because of these actions/inactions, Snodgrass challenges DoD's continuing and unlawful conduct in violation of his right to free speech under the First Amendment of the U.S. Constitution.

## JURISDICTION

1. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331.

## VENUE

2. Venue is appropriate in the District under 5 U.S.C. § 703 and 28 U.S.C. § 1391.

## PARTIES

3. Plaintiff Snodgrass recently served as Director of Communications and Chief Speechwriter to SecDef Mattis. A former Naval Aviator and F/A-18 pilot, he served as commanding officer of a fighter squadron based in Japan, TOPGUN instructor, and combat pilot over the skies of Iraq as part of his twenty year Navy career. He retired from government service in 2018. Today he is the founder and CEO of Defense Analytics, a strategic consulting and advisory firm.

4. Defendant DoD is an agency of the United States and subject to the jurisdiction of this Court. DoD's actions have prevented Snodgrass from publishing portions of his Manuscript.

## FACTS

*The Manuscript: Holding the Line*

5. The Manuscript is a memoir of Snodgrass's seventeen months serving with SecDef Mattis, offering a firsthand account of how SecDef Mattis led the U.S. military through global and domestic challenges.

6. SecDef Mattis has said very little about his difficult role, and since his resignation has kept his views of the President and his policies private, that is, until SecDef Mattis broke his silence to promote his forthcoming book. Snodgrass, who as noted served as SecDef Mattis's former chief speechwriter and communications director, has drafted the Manuscript to share with readers his own experience of serving in the Pentagon and other tours during his career. Based on his many months of closely working alongside of SecDef Mattis, Snodgrass reveals in the Manuscript how one of the nation's greatest generals walked a political tightrope while leading the world's most powerful military.

7. For example, the Manuscript describes how SecDef Mattis, Snodgrass, and staff members reacted to various administration and international issues.

8. The Manuscript is the first and only book written by a staff member with personal knowledge of key decisions and moments in history. It is a testament to the quiet and steady efforts of SecDef Mattis and the dedicated men and women he led within DoD.

***DoD's Prepublication Review Process***

9. Before the Manuscript was submitted to DoD for classification review, DoD learned of the planned publication of *Holding the Line*. In an unusual move, by letter dated March 21, 2019, the DoD's Office of General Counsel sent a threatening letter to Snodgrass and informed him that "[i]f you violate your prepublication review requirement or other legal obligations, the Department will urge legal action against you and anyone acting in concert with you."

10. Via e-mail on March 26, 2019, before the public was alerted of his Manuscript, Snodgrass informed SecDef Mattis of the forthcoming publication of his book. SecDef Mattis responded "I regret that you appear to be violating the trust that permitted you as a member of my staff to be in private meetings in my office, where those of us carrying the responsibilities believed that all could speak openly in pre-decisional discussions." In his e-mail, SecDef Mattis cc'd two members of the DoD's Office of General Counsel.

11. On April 26, 2019, Snodgrass timely and properly submitted his manuscript to DoD for prepublication review (in fact, Snodgrass had been in touch with DoD officials several times in the months prior to confirm exactly what steps he needed to take and always intended to submit his manuscript for review). He was specifically instructed by DoD officials to e-mail the manuscript using unsecure systems even though the purpose of the prepublication review was to determine whether classified information was contained in the draft. Because such a request was contrary to appropriate security protocols, Snodgrass instead hand-delivered the manuscript and DoD assigned the review case number 19-SB-0052.

12. During a May 16, 2019, telephone phone call with DoD, Snodgrass is informed that his manuscript would need to undergo a policy review in addition to a classification review. No legal justification for DoD's actions was provided.

13. During telephone conversations on June 7, 2019, DoD informs Snodgrass that the Joint Staff has not identified any classified information in the manuscript but is taking the position that all conversations in "The Tank", which refers to the Joint Chiefs of Staff Conference Room within the Pentagon's National Military Command Center, are for non-attribution and is refusing to allow Snodgrass to publish any related information. Additionally, DoD has stated it will refuse to identify in any redactions whether or not the information is classified or being withheld for another reason.

14. At a meeting with DoD officials on June 27, 2019, Snodgrass was again informed that DoD OSD Policy was reviewing his manuscript and that DoD could ultimately withhold any information without reason nor would it be required to explain why material was withheld. Additionally, the request was reiterated that he delete all mentions of "The Tank" throughout the manuscript.

15. Through the period June 2019 to the present, Snodgrass repeatedly conversed with DoD via e-mail, telephone and in person to address any requested editorial modifications and particularly to submit examples of specific references that had been publicly and officially released regarding information the Joint Chiefs was requiring to be removed, even though the information was confirmed to him as unclassified.

16. Indeed, numerous manuscripts have been cleared through the DoD prepublication review process and contained information Snodgrass is being required to delete, particularly involving conversations in and descriptions regarding "The Tank", to

include, but not limited to, those authored by former senior high-level DoD officials such as Generals Hugh Shelton and Colin Powell, Admiral Bill McRaven and Secretaries of Defense Donald Rumsfeld, Robert Gates, Leon Panetta and Ashton Carter.

17. By letter dated July 17, 2019, DoD's Director, Office of Litigation Counsel, asserted that Snodgrass has a "duty to protect the confidences of Secretary Mattis." It was further claimed "release of such information would violate the public trust placed in Mr. Snodgrass, as Secretary Mattis explained in guidance issued on October 3, 2017 (copy enclosed)." No legal or regulatory citations were identified to support these statements. The internal policy guidance that was identified, which fails to impose any legal obligation upon any former DoD official, was ironically primarily authored by Snodgrass in his capacity of SecDef Mattis's Communications Director.

18. Importantly, in the same letter of July 17, 2019, although later denied, the statements at issue regarding "The Tank" are specifically identified as being "unclassified". The letter and statement speaks for itself.

19. By letter dated July 24, 2019, the DoD Office of General Counsel noted that Snodgrass's "oath of office and personal integrity impart a special obligation to protect such information regardless of classification." Although this assertion is completely without any legal foundation, DoD then threatened Snodgrass by stating "[t]here is a range of potential consequences for violating that oath." The provision then cited in the letter, that of SECNAV Inst. 1929.6C, Administrative Separation of Officers, Encl. 6 (Dec. 15, 2005), as amended, actually includes reduction of an officer's rank during retirement.

20. By telephone conversation on August 20, 2019, Snodgrass was informed by the Defense Office of Prepublication and Security Review Executive, which is the office that spearheads classification review, that the entire review was completed, and that he should receive his clearance letter "by the end of the day, or tomorrow morning at the latest."

21. But by telephone conversation and e-mail dated August 23, 2019, the Chief, Defense Office of Prepublication and Security Review Executive, informed Snodgrass that "senior leaders have directed my office to hold our response pending the outcome of high-level discussions."

22. To date, not one word in Snodgrass's manuscript has been identified as classified. Upon information and belief, every federal office that has reviewed the manuscript has confirmed it does not contain classified information. Only editorial changes were requested by DoD, and Snodgrass is under no legal obligation to adopt any modifications that does not touch upon classified information.

23. The DoD, however, has deliberately delayed issuing formal and final approval of Snodgrass's manuscript as a retaliatory and punishing tactic, particularly with the consent and apparent approval of former SecDef Mattis. Indeed, numerous sources from within DoD have stated that final approval was intentionally withheld in order to allow SecDef Mattis's book to be published first. These tactics have succeeded and it has been reported that SecDef Mattis's book hypocritically contains his recollection of private and official conversations with the political and military leadership of the United States, to include the President, ostensibly in violation of the very loyalty and trust he sought to impose upon Snodgrass.

24. These actions detailed above not only violate Snodgrass's First Amendment rights, but the DoD has constructively imposed an injunction upon Snodgrass that prohibits the publication of his manuscript altogether. Proceeding to publication without formal written DoD authorization could lead to civil liability.

25. Based on the intentional actions of the DoD to knowingly and effectively enjoin Snodgrass from publishing his manuscript, the publication date of *Holding the Line* will need to be pushed back. Every delay of publication causes financial harm to Snodgrass.

**FIRST CAUSE OF ACTION**
**(FIRST AMENDMENT/DECLARATORY JUDGMENT**
**- RIGHT TO PUBLISH - CLASSIFICATION CHALLENGE)**

26. Snodgrass repeats and realleges the allegations contained in paragraphs 5 through 25 above, inclusive.

27. Snodgrass properly and timely submitted, pursuant to one or more secrecy agreements, his Manuscript for prepublication review.

28. DoD is legally prohibited from precluding Snodgrass from publishing anything other than classified information.

29. Absent the identification of classified information, DoD has no legal right to prevent Snodgrass from publishing information concerning "The Tank", even if former or current senior DoD officials object – including SecDef Mattis.

30. Given its current position, DoD has effectively improperly classified information that is, in fact, unclassified. The consequence of this action is to prohibit Snodgrass from publishing or disseminating the information in his manuscript as to otherwise proceed to publication subject him to legal action, which has been threatened in writing by DoD officials.

31. DoD has failed to show that Snodgrass' First Amendment right to publish is outweighed by the government's interest in efficiently carrying out its mission by minimizing harms that are real, not merely conjecture.

32. DoD has failed to demonstrate the existence of substantial government interests that would enable it to prohibit the publication of unclassified information within Snodgrass' Manuscript.

33. DoD's restrictions imposed upon Snodgrass have been unduly vague and were not narrowly confined to avoid infringement of his First Amendment rights. It has unnecessarily restricted unclassified speech that does not serve to protect any substantial government interest.

34. Because DoD has impermissibly infringed upon Snodgrass' right to publish unclassified information in his Manuscript it has violated Snodgrass' First Amendment rights.

35. Snodgrass desires to include only unclassified information in his Manuscript and all efforts to engage with DoD to negotiate an amicable resolution were unsuccessful.

36. Snodgrass has suffered or may suffer actual adverse and harmful effects, including, but not limited to, possible civil or criminal penalties, and/or lost or jeopardized present or future financial and employment opportunities.

WHEREFORE, plaintiff Guy Snodgrass requests that the Court award him the following relief:

(1) Permanently and immediately enjoin DoD from restraining the publication of any portion of unclassified text within his Manuscript;

(2) Declare that Snodgrass possesses a First Amendment right to publish any unclassified information that was redacted from his Manuscript;

(3) Declare and find that all of the text in the Manuscript is unclassified;

(4) Award Snodgrass the costs of the action and reasonable attorney fees under the Equal Access to Justice Act or any other applicable law;

(5) Award any appropriate compensation to Snodgrass for any losses suffered or expenses incurred due to the defendant's actions; and

(6) grant such other relief as the Court may deem just and proper.

Date:   August 29, 2019

Respectfully submitted,

/s/

_____
Mark S. Zaid, Esq.
D.C. Bar #440532
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 700
Washington, D.C. 20036
(202) 454-2809
(202) 330-5610 fax
Mark@MarkZaid.com

Attorney for Plaintiff