## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GUY SNODGRASS             *

                               *

      Plaintiff,           *

                               *

      v.                  *      Case No. 19-2067

                               *

DEPARTMENT OF DEFENSE    *

                               *

      Defendant.        *

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF APPLICATION
## FOR ORDER OF PRELIMINARY AND/OR PERMANENT INJUNCTION

Date: September 3, 2019

Respectfully Submitted,

_____/s/_____
Mark S. Zaid
D.C. Bar #440532
Bradley P. Moss, Esq.
D.C. Bar #975905
MARK S. ZAID, P.C.
1250 Connecticut Avenue, N.W.
Suite 700
Washington, DC 20036
(202) 454-2809
(202) 330-5610 fax
Mark@MarkZaid.com
Brad@MarkZaid.com

Attorneys for Plaintiff

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** . . . . . . . . i

**FACTUAL AND PROCEDURAL BACKGROUND**. . . . . 2

    *DoD's Prepublication Review Process* . . . . . . 3

**LEGAL STANDARD** . . . . . . . . 10

**ARGUMENT**. . . . . . . . . 13

**I. PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIMS** . . . . . . . . 14

**II. PLAINTIFF WILL SUFFER IRREPARABLE HARM WITHOUT PRELIMINARY RELIEF** . . . . . . . 16

    **A. The Defendant's Actions Have Already Caused The Manuscript's Publication To Be Delayed And Every Day That Goes By Threatens Future Publication** . . . . . . 17

**III. THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST OVERWHELMINGLY FAVORS GRANTING THE PLAINTIFF PRELIMINARY RELIEF** . . . . . . 18

**CONCLUSION** . . . . . . . . 19

# TABLE OF AUTHORITIES

**Caselaw**

Action for Children's Television v. FCC, 59 F.3d 1249 (D.C. Cir. 1995),
   cert. denied, 116 S.Ct. 773 (1996)   .   .   .   .   .   .   13

Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127 (9th Cir. 2011)   .   .   11

American Camping Ass'n v. Whalen, 465 F. Supp. 327 (S.D.N.Y. 1978)   .   .   14

Ashland Oil, Inc. v. FTC, 409 F. Supp. 297 (D.D.C. 1976)   .   .   .   17

Auvil v. CBS "60 Minutes", 800 F. Supp. 928 (E.D. Wash. 1992)   .   .   .   14

Beacon Theatres, Inc. v. Westover, 359 U.S. 500 (1959)   .   .   .   11

Bernard v. Gulf Oil Co., 619 F.2d 459 (5th Cir. 1980), aff'd, 452 U.S. 89 (1981)   .   13

Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290 (D.C. Cir. 2006)   .   17

CityFed Fin. Corp. v. Office of Thrift Supervision, 58 F.3d 738 (D.C. Cir. 1995)   .   12

City of Littleton v. Z. J. Gifts D-4, L.L.C, 541 U.S. 774 (2004)   .   .   .   14

Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.,
   598 F.3d 30 (2d Cir. 2010)   .   .   .   .   .   .   .   11

Collin v. Smith, 447 F. Supp. 676 (N.D. Ill. 1978)   .   .   .   .   14

Collin v. Smith, 578 F.2d 1197 (7th Cir. 1978)   .   .   .   .   14

Davenport v. Int'l Bhd. of Teamsters, 166 F.3d 356 (D.C. Cir.1999)   .   .   11

Davis v. Pension Ben. Guar. Corp., 571 F.3d 1288 (D.C. Cir. 2009).   .   .   11

Edgar et al. v. Coats et. al., Civ. No. 19-0985 (D.Md. 2019) .   .   .   .   24

Elec. Privacy Info. Ctr. v. DOJ, 15 F. Supp. 3d 32 (D.D.C. 2014)   .   .   .   13

Elrod v. Burns, 427 U.S. 347 (1976) .   .   .   .   .   18

Freedman v. State of Maryland, 380 U.S. 51 (1965) .   .   .   .   .   14

FW/PBS, Inc. v. Dallas, 493 U.S. 215 (1990)   .   .   .   .   14

Gordon v. Holder, 721 F.3d 638 (D.C. Cir. 2013)   .   .   .   .   .   19

Hoosier Energy Rural Elec. Coop. v. John Hancock Life Ins. Co.,
   582 F.3d 721 (7th Cir. 2009)   .   .   .   .   .   .   .   11

Judicial Watch, Inc. v. Dep't of Homeland Sec., 514 F. Supp. 2d 7 (D.D.C. 2007) .   16

League of Women Voters of United States v. Newby, 838 F.3d 1 (D.C. Cir. 2016) .   10

*McGehee v. Casey, 718 F.2d 1137 (D.C. Cir. 1983)   .   .   .   .   15

Mills v. District of Columbia, 571 F.3d 1304 (D.C. Cir. 2009)   .   .   .   18

Mullins v. City of New York, 626 F.3d 47 (2d Cir. 2010)   .   .   .   .   16

Munaf v. Geren, 553 U.S. 674 (2008)   .   .   .   .   .   .   10

National Student Ass'n v. Hershey, 412 F.2d 1103 (D.C. Cir. 1969)   .   .   14

New York Times Co. v. United States, 403 U.S. 713 (1971) .   .   .   .   16

Nken v. Holder, 556 U.S. 418 (2009) .   .   .   .   .   .   .   12,19

Potwora v. Dillon, 386 F.2d 7 (2d Cir. 1967) .   .   .   .   .   .   14

Power Mobility Coal. v. Leavitt, 404 F. Supp. 2d 190 (D.D.C. 2005)   .   .   12

Pursuing Am.'s Greatness v. FEC, 831 F.3d 500 (D.C. Cir. 2016)   .   .   18,19

Quarter Action Group v. Hickel, 421 F.2d 1111 (D.C. Cir. 1969)   .   .   14

Real Truth About Obama, Inc. v. FEC, 575 F.3d 342 (4th Cir. 2009)   .   .   11

Sampson v. Murray, 415 U.S. 61 (1974)   .   .   .   .   .   .   11

Sherley v. Sebelius, 644 F.3d 388 (D.C. Cir. 2011)   .   .   .   .   11

Snepp v. United States, 444 U.S. 507 (1980) .   .   .   .   .   .   15

*Stillman v. CIA et al., 319 F.3d 546 (D.C. Cir. 2003)   .   .   .   .   15

Stillman v. CIA et al., 517 F. Supp. 2d 32 (D.D.C. 2007)   .   .   .   15

Taucher v. Rainer, 237 F. Supp. 2d 7 (D.D.C. 2002) .   .   .   .   .   16

Trump v. Int'l Refugee Assistance Project, 137 S. Ct. 2080 (2017) .   .   .   12

*United States v. Marchetti, 466 F.2d 1309 (4th Cir.), cert. denied,
    409 U.S. 1063 (1972) . . . . . . . . . 15

University of Tex. v. Camenisch, 451 U.S. 390 (1981) . . . . 12,16

Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7 (2008) . . . *passim*

Wisconsin Gas Co. v. FERC, 758 F.2d 669 (D.C. Cir. 1985) . . . 12,13,16,17

**Statutes**

5 U.S.C. § 702 et seq . . . . . . . . . . 1

28 U.S.C. § 2201 . . . . . . . . . . 1

**Rules, Treatise and Other Citations**

Fed. R. Civ. P. 65 . . . . . . . . . . 1,13

*First Amendment, U.S. Constitution . . . . . . . *passim*

LCvR 65 . . . . . . . . . . 1,13

LCvR 65(d) . . . . . . . . . . 16

"Duty, Democracy and the Threat of Tribalism," Wall Street Journal,
    August 28, 2019 . . . . . . . . . . 2

"In Book, Former Defense Chief Mattis Sideswipes President Trump's Leadership
    Skills," National Public Radio, August 28, 2019 . . . . . . 2

* Citations primarily relied upon

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

GUY SNODGRASS            *

                  *

      Plaintiff,           *

                  *

      v.                  *       Case No. 19-2607

                  *

DEPARTMENT OF DEFENSE     *

                  *

      Defendant.        *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR ORDER OF PRELIMINARY AND/OR PERMANENT INJUNCTION

Plaintiff Guy Snodgrass ("Plaintiff") filed this action against defendant Department of Defense ("Defendant" or "DoD") for injunctive and declaratory relief pursuant to the Administrative Procedure Act, 5 U.S.C. § 702 et seq., the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and the First Amendment to the Constitution of the United States. DoD has unlawfully imposed a prior restraint upon Plaintiff by obstructing and infringing on his right to publish unclassified information in his manuscript entitled, "*Holding the Line: Inside Trump's Pentagon With Secretary Mattis*" (Sentinel, October 29, 2019)("Manuscript").

In accordance with the procedures set forth in Rule 65 of the Federal Rules of Civil Procedures and Local Rule 65 of this Court, Plaintiff respectfully requests the issuance of a preliminary and/or permanent injunction against the Defendant to require it to immediately finalize the prepublication classification review of Plaintiff's manuscript and specifically identify any classified information that may be contained therein. Additionally, as a matter of law, it is respectfully requested that the Defendant be permanently enjoined from censoring Plaintiff from publishing any unclassified information and that the Court issue a determination that the contents of his Manuscript are, in fact, unclassified.

## FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiff served as Director of Communications and Chief Speechwriter to Secretary of Defense James Mattis ("Secretary Mattis") from April 2017 to August 2018, and is a former naval officer and F/A-18 pilot. During his twenty-year career, Plaintiff served as commanding officer of a fighter squadron based in Japan, speechwriter to the Chief of Naval Operations, TOPGUN instructor, and as a combat pilot over the skies of Iraq. He retired from government service in August 2018. He is currently the CEO of Defense Analytics, a strategic consulting and advisory firm, which he founded after retirement. Complaint at ¶3 (Dkt 1)(filed August 29, 2019); Affidavit of Guy Snodgrass at ¶2 (dated September 3, 2019)("Snodgrass Aff."), attached at Exhibit "1".

The Manuscript is a memoir of Plaintiff's seventeen months serving with Secretary Mattis and offers a firsthand account of how the Secretary led the U.S. military through global and domestic challenges. Complaint at ¶5; Snodgrass Aff. at ¶3.[1] Secretary Mattis has said very little about his difficult role, and since his resignation has kept his views of the President and his policies private, that is, until he recently broke his silence to promote his forthcoming book. See "Duty, Democracy and the Threat of Tribalism," Wall Street Journal, August 28, 2019, at *https://www.wsj.com/articles/jim-mattis-duty-democracy-and-the-threat-of-tribalism-11566984601*; "In Book, Former Defense Chief Mattis Sideswipes President Trump's Leadership Skills," National Public Radio, August 28, 2019, at *https://www.npr.org/2019/08/28/755018189/in-book-former-defense-chief-mattis-side-swipes-president-trump-s-leadership-ski*.

---

[1] Because the Manuscript has not been formally approved as unclassified, the Plaintiff is unable to submit a copy to the Court for review. Therefore, it is requested that the Court order the Defendant to submit a copy for review under seal (to not only protect any classification concerns but also the Plaintiff's copyright ownership).

The Plaintiff drafted his Manuscript to share with readers his own experience of serving in the Pentagon and other tours during his career. Based on his many months of closely working alongside of Secretary Mattis, the Manuscript reveals how one of the nation's greatest generals walked a political tightrope while leading the world's most powerful military. Complaint at ¶6; Snodgrass Aff. at ¶4. For example, the Manuscript describes how Secretary Mattis, Plaintiff, and staff members reacted to various administration and international issues. Complaint at ¶7; Snodgrass Aff. at ¶4. The Manuscript is the first and only book written by a staff member with personal knowledge of key decisions and moments in history. It is a testament to the quiet and steady efforts of Secretary Mattis and the dedicated men and women he led within the Department of Defense. Complaint at ¶8; Snodgrass Aff. at ¶4.

### *DoD's Prepublication Review Process*

Before the Manuscript was submitted to Defendant for classification review, it learned of the planned publication. In an unusual move, by letter dated March 21, 2019, the Defendant's Office of General Counsel sent a threatening letter to Plaintiff and informed him that "[i]f you violate your prepublication review requirement or other legal obligations, the Department will urge legal action against you and anyone acting in concert with you Complaint at ¶9; Snodgrass Aff. at ¶5, Exhibit "1-A". The Plaintiff's legal counsel responded by letter dated March 28, 2019. Snodgrass Aff. at ¶5; Exhibit "1-B".

On March 26, 2019, before the public was alerted of his Manuscript, Plaintiff informed Secretary Mattis via e-mail of the forthcoming publication of his book. Secretary Mattis responded "I regret that you appear to be violating the trust that permitted you as a member of my staff to be in private meetings in my office, where those of us carrying the responsibilities believed that all could speak openly in pre-decisional discussions." In his e-mail, Secretary

Mattis cc'd two members of the DoD's Office of General Counsel. Complaint at ¶10; Snodgrass

Aff. at ¶7; Exhibit "1-C".

On April 26, 2019, Plaintiff timely and properly submitted his Manuscript to DoD for

prepublication review (in fact, he had been in touch with DoD officials several times in the

months prior to confirm exactly what steps he needed to take and always intended to submit his

Manuscript for review). Snodgrass Aff. at ¶6.[2] He was specifically instructed by DoD officials to

e-mail the Manuscript using unsecure systems even though the purpose of the prepublication

review was to determine whether classified information was contained in the draft. Because such

a request was contrary to appropriate security protocols, Plaintiff instead hand-delivered the

Manuscript. DoD assigned the review case number 19-SB-0052. Complaint at ¶11; Snodgrass

Aff. at ¶8.

During a May 16, 2019, telephone phone call with DoD, Plaintiff is informed that his

Manuscript would need to undergo a policy review in addition to a classification review. No

legal justification for DoD's actions was provided. Complaint at ¶12; Snodgrass Aff. at ¶9.

During multiple telephone conversations on June 7, 2019, DoD informed Plaintiff that the White

House, State Department, and Joint Staff had completed their reviews. Although the Joint Staff

did not identify any classified information in the Manuscript, it was nonetheless taking the

position that all conversations in "The Tank", which refers to the Joint Chiefs of Staff

Conference Room within the Pentagon, was for non-attribution and was refusing to allow him to

---

[2] These interactions included a December 7, 2018, phone call with a representative of the
Defense Officer of Prepublication and Security Review ("DOPSR"), the office that spearheads
classification review, when Plaintiff coordinated a realistic release date for his Manuscript.
During this call the representative confirmed that as a previous employee, Plaintiff was only
subject to a classification review. He also confirmed that manuscripts would be reviewed within
30 days in accordance with Plaintiff's Top Secret/Sensitive Compartmentalized Information
nondisclosure agreement, although "sometimes manuscripts can take up to 45 days." Snodgrass
Aff. at ¶6.

publish any related information. Additionally, DoD stated it will refuse to identify for any of the redactions whether or not the information is classified or being withheld for another reason. Complaint at ¶13; Snodgrass Aff. at ¶9. As an act of good faith, Snodgrass made the requested changes and resubmitted the updated chapters to DOPSR on June 10, 2019, the next working day. Id.

During a June 19, 2019, telephone call with DOPSR, a representative stated that Plaintiff's Manuscript was cleared without redaction by the Office of General Counsel. The representative also stated that only three offices still needed to finish their reviews, and that the Manuscript's review "should be completed in weeks, not months." During a subsequent June 24, 2019, telephone call with DOPSR, Plaintiff's assigned point of contact restated that his Manuscript needed a policy review in addition to a classification review. Additional offices were subsequently included in the review process. A meeting was coordinated to discuss face-to-face.

On June 27, 2019, Plaintiff attended a meeting with DoD officials and was informed that additional DoD components, including OSD Policy, would still need to review his Manuscript "for accuracy." Furthermore, he was told that DoD could at any time redact any information without reason nor would it be required to explain why the redacted material was withheld. Additionally, it was reiterated again that Plaintiff confirm that all mentions of "The Tank" were deleted throughout the Manuscript. Complaint at ¶14; Snodgrass Aff. at ¶10.

Throughout the period June 2019 to the present, Plaintiff repeatedly conversed with DoD via e-mail, telephone, and in person to address any requested editorial modifications and particularly to submit examples of specific references that had been publicly and officially released regarding information the Joint Staff was requiring to be removed, even though the information was confirmed to him as unclassified. Complaint at ¶15; Snodgrass Aff. at ¶11.

It is well known that numerous manuscripts have been cleared through the DoD

prepublication review process and contained the same or similar information that Plaintiff is

being required to delete, particularly involving conversations in and descriptions regarding "The

Tank". This includes, but is not limited to, those authored by former senior high-level DoD

officials such as Generals Hugh Shelton and Colin Powell, Admiral Bill McRaven and

Secretaries of Defense Donald Rumsfeld, Robert Gates, Leon Panetta and Ashton Carter.

Complaint at ¶16; Snodgrass Aff. at ¶12.[3] But by e-mail dated July 3, 2019, DOPSR notified

Plaintiff that:

> the JS [Joint Staff] judges that deletion of any mention of the Tank does not
> deflect or delink any of the discussions in Chapters 6, 13, and 17 from the JS
> context in a way that avoids attribution.  Accordingly, they do not agree that your
> re-write negates their concerns over the extensive attribution in your 3 chapters.
> They continue to withhold the majority of the material you present in chapters 6,
> 13 and 17.  To boil it down to simplest terms, the prominent quotations of those
> involved in the discussions you provide constitute, in their eyes, explicit
> attribution in a way that does not fulfill their non-attribution policy WRT the
> Tank.  Their position is that the members of the CJCS-and other principles as
> well--need to have absolute confidence that their discussions, to include physical
> reaction and body language, will not be replicated, period.  They insist that the
> explicit attribution, in the form of quotes, be deleted; all instances of CJCS
> members being mentioned as contributing to the discussion(s) be removed; and
> the discussions summarized in a quote-less narrative reflecting current public
> knowledge about the discussions.  They desire that you remove the detailed
> disclosures, note that the meeting occurred, certain subjects were discussed,
> options provided, and decisions made.

Snodgrass Aff. at ¶13, Exhibit "1-D". By letter dated July 10, 2019, Plaintiff's counsel requested

Defendant to acknowledge by July 17, 2019, that it was not permitted to prevent Plaintiff from

---

[3] The books were: General Hugh Shelton, "Without Hesitation: The Odyssey of an American
Warrior" (2010); General Colin Powell, "My American Journey: An Autobiography" (2010);
Admiral Bill McRaven, "Sea Stories: My Life in Special Operations" (2019); Donald Rumsfeld,
"Known and Unknown: A Memoir" (2011); Robert Gates, "Duty: Memoirs of a Secretary at
War" (2014); Leon Panetta, "Worthy Fights: A Memoir of Leadership in War and Peace"
(2014); Ashton Carter, "Inside the Five-Sided Box" (2019).

publishing unclassified information, and affirm that the concerns asserted by the Joint Staff did not pertain to classified information. Snodgrass Aff. at ¶14, Exhibit "1-E".

By letter dated July 17, 2019, DoD's Director, Office of Litigation Counsel, asserted that Snodgrass has a "duty to protect the confidences of Secretary Mattis." It was further claimed "release of such information would violate the public trust placed in Mr. Snodgrass, as Secretary Mattis explained in guidance issued on October 3, 2017 (copy enclosed)." No legal or regulatory citations were identified to support these statements. Snodgrass Aff. at ¶15, Exhibit "1-F". The internal policy guidance that was identified, which fails to impose any legal obligation upon any former DoD official, was ironically primarily authored by Snodgrass in his capacity of Secretary Mattis's Communications Director. Importantly, although denied in a subsequent letter, the statements at issue regarding "The Tank" are specifically identified as being "unclassified". Complaint at ¶¶17-18; Snodgrass Aff. at ¶15.

The Plaintiff's attorney, by letter dated July 18, 2019, challenged the Defendant's assertion that a legal obligation existed beyond the protection of classified information. Snodgrass Aff. at ¶17, Exhibit "1-G". By letter dated July 24, 2019, the DoD Office of General Counsel noted that Plaintiff's "oath of office and personal integrity impart a special obligation to protect such information regardless of classification." Although this assertion is completely without any legal foundation, DoD then threatened Snodgrass by stating "[t]here is a range of potential consequences for violating that oath." The provision then cited in the letter, that of SECNAV Inst. 1929.6C, Administrative Separation of Officers, Encl. 6 (Dec. 15, 2005), as amended, actually includes reduction of an officer's rank during retirement. Complaint at ¶19; Snodgrass Aff. at ¶17, Exhibit "1-H".

Notwithstanding the Defendant's far reaching and unsupportable, legal claims, Plaintiff's

counsel pointed out in a letter dated August 7, 2019, that in another recent prepublication review

case (Edgar v. Coats, D.Md) the Department of Justice, in its representation of Defendant,

argued exactly what Plaintiff was saying:

> With respect to submissions from "former DoD employees" and other "non-DoD sources," the instructions provide for DOPSR to conduct a "security review" to **"ensure that classified information is not disclosed."** *DoDI 5230.29, Enc. 2 § 2(e).*
>
> *The nondisclosure agreements themselves provide that submissions of prior employees must undergo only "security review" to determine whether the intended publication contains classified materials. Form 4414 § 4; see also SF 312 § 3. Thus, DoD requirements that pertain to reviews other than for classified information purposes, Compl. ¶¶ 38(c), 39, **are inapplicable to former employees**.*

Snodgrass Aff. at ¶18, Exhibit "1-I". It was requested of Defendant that a meeting occur no later

than August 16, 2019, so that final discussions could occur. The meeting never happened. Id.

By telephone conversation on August 15, 2019, the Director, DOPSR, stated that the review

of Plaintiff's Manuscript was completed. The Director requested that Plaintiff "trust him," stating

that he had successfully resolved the dispute with the Joint Staff in Plaintiff's favor but that he

needed a few more days to complete the process and the clearance letter. Then, by telephone

conversation on August 20, 2019, Plaintiff was informed by DOPSR that he should receive his

clearance letter "by the end of the day, or tomorrow morning at the latest." . Complaint at ¶20;

Snodgrass Aff. at ¶19. But by telephone conversation and e-mail dated August 23, 2019, the

Chief, DOPSR, informed Plaintiff that "senior leaders have directed my office to hold our

response pending the outcome of high-level discussions." Complaint at ¶21; Snodgrass Aff. at

¶19, Exhibit "1-J".

8

Notwithstanding Plaintiff's repeated efforts to negotiate with Defendant and play by the rules, DoD continued its harassment and threats. By letter dated August 22, 2019, the Office of General Counsel regurgitated its original letter of March 21, 2019, and again demanded return of all official government records in Plaintiff's possession. Snodgrass Aff. at ¶20, Exhibit "1-K". Plaintiff's counsel responded by letter dated August 26, 2019, and reiterated that none existed. Id., Exhibit "1-L". Additionally, an explanation was requested by August 28, 2019, as to why senior DoD officials had instructed DOPSR to withhold approval. Id. No response was received.

To date, not one word in Plaintiff's manuscript has been identified as classified. Upon information and belief, every federal office that has reviewed the Manuscript has confirmed it does not contain classified information. Only editorial changes were requested by DoD, and Plaintiff is under no legal obligation to adopt any modifications that does not touch upon classified information. Complaint at ¶22; Snodgrass Aff. at ¶21.

The DoD, however, has deliberately delayed issuing formal and final approval of Plaintiff's Manuscript as a retaliatory and punishing tactic, particularly with the consent and apparent approval of former Secretary Mattis. Indeed, numerous sources from within DoD have stated that final approval was intentionally withheld in order to allow Secretary Mattis's book to be published first. By e-mail dated July 28, 2019, Secretary of Defense Mark Esper's Chief of Staff confirmed that Secretary Mattis's Deputy Chief of Staff, who still resides in Secretary Esper's office, "is working this" for the current Secretary of Defense, proving high-level awareness and engagement within DoD. Id., at ¶22, Exhibit "1-M". These tactics have succeeded and it has been reported that Secretary Mattis's book hypocritically contains his recollection of private and official conversations with the political and military leadership of the United States, to include

the President, ostensibly in violation of the very loyalty and trust he sought to impose upon Plaintiff. Complaint at ¶23; Snodgrass Aff. at ¶22.

The actions detailed above not only violate Plaintiff's First Amendment rights, but the DoD has constructively imposed an injunction upon him that prohibits the publication of his Manuscript altogether. Proceeding to publication without formal written DoD authorization could lead to civil liability. Complaint at ¶24; Snodgrass Aff. at ¶23. Based on the intentional actions of the DoD to knowingly and effectively enjoin Plaintiff from publishing his Manuscript, the publication date of *Holding the Line* will need to be pushed back. Every delay of publication causes financial harm to Plaintiff. Id. at ¶23; Affidavit of Adrian Zackheim at ¶¶6-9 (dated September 3, 2019)("Zachkeim Aff."), attached at Exhibit "2".

In order to challenge Defendant's unlawful censorship to prohibit the publication of Plaintiff's Manuscript, this legal action was filed on August 29, 2019.

## LEGAL STANDARD

In order to prevail on a motion for a preliminary injunction, the movant must show four factors: "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). See also League of Women Voters of United States v. Newby, 838 F.3d 1, 6 (D.C. Cir. 2016)(identifying four factors). A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." Munaf v. Geren, 553 U.S. 674, 689-90 (2008)(citations omitted). The moving party must demonstrate a likelihood of success on the merits, id., and some injury, as "[t]he basis of injunctive relief in the federal courts has always

been irreparable harm." Sampson v. Murray, 415 U.S. 61, 88 (1974), quoting Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506-07 (1959).

In the past, courts in this Circuit have applied a "sliding scale" approach in analyzing the four preliminary injunction factors, meaning "[i]f the movant makes an unusually strong showing on one of the factors, then it does not necessarily have to make as strong a showing on another factor." Davis v. Pension Ben. Guar. Corp., 571 F.3d 1288, 1291–92 (D.C. Cir. 2009), citing Davenport v. Int'l Bhd. of Teamsters, 166 F.3d 356, 361 (D.C. Cir.1999). Candidly, it is not clear whether this approach has survived Winter as the circuit courts have split on the question whether "sliding scale" tests of this nature remain viable, or whether instead a movant must always show that he or she is mathematically likely to succeed on the merits.[4] Panels of the D.C. Circuit have suggested that they might side with the Fourth Circuit, see e.g., Sherley v. Sebelius, 644 F.3d 388, 393 (D.C. Cir. 2011), but to date this Circuit "has not yet needed to decide this issue," Newby, 838 F.3d at 7.

Frankly, this Court need not decide the issue because under either approach Plaintiff is entitled to preliminary, if not permanent, relief. But should it determine the need to take a position, it should apply this Circuit's longstanding precedent, which has not been disavowed,

---

[4] Compare Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1130–35 (9th Cir. 2011) (sliding scales survive Winter); Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35–38 (2d Cir. 2010)(same), and Hoosier Energy Rural Elec. Coop. v. John Hancock Life Ins. Co., 582 F.3d 721, 725 (7th Cir. 2009)(same), with Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 347 (4th Cir. 2009)(reading Winter to require movants always establish they are likely to succeed on merits).

and stand with the Circuits that have held that sliding scales survive <u>Winter</u>.[5] In any event, under

either approach, the movant must always show irreparable harm or injury, and if a party makes

no showing of irreparable injury, the court may deny the motion for injunctive relief without

considering the other factors. <u>CityFed Fin. Corp. v. Office of Thrift Supervision</u>, 58 F.3d 738,

747 (D.C. Cir. 1995).

Plaintiff of course acknowledges that the standard for irreparable harm is particularly high in

the D.C. Circuit. "[P]roving irreparable injury is a considerable burden, requiring proof that the

movant's injury is *certain, great and actual*—not theoretical—and *imminent*, creating a clear and

present need for extraordinary equitable relief to prevent harm." <u>Power Mobility Coal. v. Leavitt</u>,

404 F. Supp. 2d 190, 204 (D.D.C. 2005), <u>quoting</u> <u>Wis. Gas Co. v. FERC</u>, 758 F.2d 669, 674

(D.C. Cir. 1985)(internal quotation marks omitted)(emphasis in original). Additionally, "the

certain and immediate harm that a movant alleges must also be truly irreparable in the sense that

---

[5] <u>Winter</u> rejected the Ninth Circuit's incredibly lenient standard that allowed for the grant
of an injunction based only on the "possibility" of irreparable harm. 555 U.S. at 21-22. Justice
Ginsburg noted in dissent that the majority opinion did not, in fact, overturn courts' longstanding
practice of applying sliding scales, a contention that the majority never refuted. <u>See</u> 555 U.S. at
51 (Ginsburg, J., dissenting)("Consistent with equity's character, courts have evaluated claims
for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of
harm when the likelihood of success is very high.. . . This Court has never rejected that
formulation, and I do not believe it does so today."). The majority never refuted that contention,
and recent developments suggest Justice Ginsburg was correct. The standard governing stays
pending appeal is the same as the standard governing preliminary injunctions articulated in
<u>Winter</u>. <u>See</u> <u>Nken v. Holder</u>, 556 U.S. 418, 434 (2009)(articulating four factors governing stays
pending appeal and citing Winter); <u>id.</u> at 443 (Kennedy, J., dissenting)("it is revealing that the
standard that the Court adopts for determining whether a stay should be ordered is the standard
that is used in weighing an application for a preliminary injunction"). In <u>Trump v. Int'l Refugee
Assistance Project</u>, 137 S. Ct. 2080 (2017), the Supreme Court granted a stay pending certiorari
based entirely on an analysis of the balance of the equities, with no discussion at all of the
movant's chances of succeeding on the merits. <u>Id.</u> at 2087. It noted there that "[t]he purpose of
such interim equitable relief is not to conclusively determine the rights of the parties, <u>University
of Tex. v. Camenisch</u>, 451 U.S. 390, 395 (1981), but to balance the equities as the litigation
moves forward." <u>Id.</u> <u>Winter</u> simply stands for the proposition that there must be more than a
mere "possibility" of each of the four factors required for injunctive relief.

it is 'beyond remediation.'" Elec. Privacy Info. Ctr. v. DOJ, 15 F. Supp. 3d 32, 44 (D.D.C.

2014)(citation omitted).

The movant must also provide some evidence of irreparable harm: "the movant [must]

substantiate the claim that irreparable injury is likely to occur" and "provide proof that the harm

has occurred in the past and is likely to occur again, or proof indicating that the harm is certain to

occur in the near future." Wis. Gas Co., 758 F.2d at 674 (internal quotation marks and citation

omitted). This is because "[i]ssuing a preliminary injunction based only on a possibility of

irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary

remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such

relief." Winter, 555 U.S. at 22.

As these authorities make clear, to meet the standard for irreparable harm the movant must

present sufficient evidence that the purported injury is certain, great, actual, imminent, and

beyond remediation. Plaintiff here has sufficiently met each and every burden. Therefore, the

Court should respectfully grant the requested relief.

## **ARGUMENT**

In addition to the short time frame that occurs through pursuit of an injunction, see

Fed.R.Civ.P. Rule 65; LCvR 65, it has long been well settled by courts throughout the United

States that expedited attention should be given to cases involving First Amendment interests. See

e.g., Action for Children's Television v. FCC, 59 F.3d 1249, 1259 (D.C. Cir. 1995)(finding that

"possibility that the agency's actions might similarly run afoul of the first amendment demands

prompt judicial scrutiny") cert. denied, 116 S.Ct. 773 (1996); Bernard v. Gulf Oil Co., 619 F.2d

459, 470 (5th Cir. 1980), aff'd, 452 U.S. 89 (1981)("Fragile First Amendments rights are often

lost or prejudiced by delay….Court have therefore been commendably willing to expedite

proceedings involving First Amendment right."); National Student Ass'n v. Hershey, 412 F.2d

1103, 1115 (D.C. Cir. 1969)(recognizing "urgency of prompt protection for frail First

Amendment interests"); Potwora v. Dillon, 386 F.2d 7, 76 (2d Cir. 1967)(hearing case on

expedited basis "[i]n light of plaintiffs' representation that the order deprived them of important

First Amendment rights").[6]

Indeed, the Supreme Court has held that there exists a "constitutional need to avoid 'undue

delay result[ing] in the unconstitutional suppression of protected speech.'" City of Littleton v. Z.

J. Gifts D-4, L.L.C, 541 U.S. 774, 782 (2004), quoting FW/PBS, Inc. v. Dallas, 493 U.S. 215,

228 (1990). See also Freedman v. State of Maryland, 380 U.S. 51, 59-60 (1965)(providing

mechanism for prompt review is necessary to avoid offending constitutional protections); Collin

v. Smith, 578 F.2d 1197, 1209 (7th Cir. 1978)("We have endeavored to expedite decision,

because to delay the exercise of First Amendment rights in itself burdens them and may risk their

destruction."); Quarter Action Group v. Hickel, 421 F.2d 1111, 1116 (D.C. Cir. 1969)(noting

"any delay in the exercise of First Amendment rights constitutes an irreparable injury to those

seeking such exercise") (citation omitted).

# I.   PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF HIS CLAIMS

The law here is clear. Defendant cannot censor Plaintiff's publication of unclassified

information. Plain and simple. No matter what excuses the Defendant argues or how loud it

shouts, there is no such "oath of office and personal integrity [that] impart[s] a special obligation

to protect such information regardless of classification." Snodgrass Aff., Exhibit "1-I". There is

---

[6] See also Auvil v. CBS "60 Minutes", 800 F. Supp. 928, 937 (E.D. Wash. 1992)("The public
interest is best served by expeditious disposition of cases raising First Amendment issues.");
Collin v. Smith, 447 F. Supp. 676, 680 (N.D. Ill. 1978)(ordering "trial on an expedited schedule
in view of the compelling national interest in prompt resolution of cases implicating First
Amendment freedoms"); American Camping Ass'n v. Whalen, 465 F. Supp. 327, 330 (S.D.N.Y.
1978)(finding a "prompt trial on the merits is required" with First Amendment rights at stake).

classified information that cannot be published, and there is everything else that cannot be censored by the Defendant.[7]

As the D.C. Circuit has noted, Government secrecy agreements, such as executed by the Plaintiff, do not extend to "unclassified materials or to information obtained from public sources." McGehee v. Casey, 718 F.2d 1137, 1142 (D.C. Cir. 1983). See Stillman v. CIA et al., 319 F.3d 546, 548 (D.C. Cir. 2003)(if information not classified properly, manuscript can be published). The government may not censor such material, "contractually or otherwise." United States v. Marchetti, 466 F.2d 1309, 1313 (4th Cir.), cert. denied, 409 U.S. 1063 (1972). "[A]ny secrecy agreement which purports to prevent disclosure of unclassified information would contravene First Amendment rights." Stillman v. CIA et al., 517 F. Supp. 2d 32, 37 fn. 4 (D.D.C. 2007), citing Marchetti, 466 F.2d at 1317. Accord Snepp v. United States, 444 U.S. 507, 513 n.8 (1980)("if in fact information is unclassified or in the public domain, neither the CIA nor foreign agencies would be concerned"). Moreover, when the information at issue derives from public sources, the agent's special relationship of trust with the government is greatly diminished if not wholly vitiated." McGehee, 718 F.2d at 1141.

In pre-publication review litigation the initial written record is always produced almost in its entirety by the U.S. Government in the form of unclassified exhibits and agency declarations – as well as potentially classified exhibits and agency declarations filed *ex parte* – submitted in support of the government's motion for summary judgment. Id., at 7; see also Stillman v. CIA, 319 F.3d at 548-49 ("The district should first inspect the manuscript and consider any pleadings and declarations filed by the Government, as well as any material filed by [plaintiff.").

---

[7] Of course, there are exceptions to this broad statement, such as when statutes prohibit publication, i.e., grand jury material, tax records, or otherwise limit First Amendment rights, but none of the exceptions are at issue in the Manuscript or litigation.

Therefore, in the time required under LCvR 65 (d), the Defendant should be required to identify and justify any redactions based on classified information, as well as specifically assert whether it is prohibiting Plaintiff from publishing unclassified information.

Regardless of what the Defendants attempts to argue, it is clear that any prior restraint "comes to the Court bearing a heavy presumption against its constitutional validity." See Taucher v. Rainer, 237 F. Supp. 2d 7, 12 (D.D.C. 2002), quoting New York Times Co. v. United States, 403 U.S. 713, 714 (1971). There is no classified information within Plaintiff's Manuscript, and the Defendant has repeatedly admitted this to be true. Snodgrass Aff. at ¶¶16,19,21, Exhibit "1-F"[8]

As a result, and based on the known, as well as anticipated, facts, Plaintiff has demonstrated he is likely to succeed on the merits. Therefore, this Court should respectfully immediately enjoin the Defendant from prohibiting the Plaintiff from publishing unclassified information and require DoD to formally approve publication of the Manuscript.

## II.  PLAINTIFF WILL SUFFER IRREPARABLE HARM WITHOUT PRELIMINARY RELIEF

Courts in this jurisdiction have recognized that "[t]he concept of irreparable harm does not readily lend itself to definition." Judicial Watch, Inc. v. Dep't of Homeland Sec., 514 F. Supp. 2d 7, 10 (D.D.C. 2007). Nonetheless, the D.C. Circuit has laid out "several well known and indisputable principles" that should underlie a court's analysis. Wisconsin Gas Co. v.

---

[8] Some of Plaintiff's evidence is based on statements made to him by DoD officials. But "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." Camenisch, 451 U.S. at 395; see also Mullins v. City of New York, 626 F.3d 47, 52 (2d Cir. 2010)("[S]ix of our sister circuits have permitted district courts to rely on hearsay evidence for the limited purpose of determining whether to award a preliminary injunction.").

Federal Energy Regulatory Com., 758 F.2d 669, 674 (D.C. Cir. 1985). First, the party seeking preliminary injunctive relief must demonstrate that the claimed injury is "both certain and great" and "actual and not theoretical." Id. Second, the movant "must show that '[t]he injury complained of [is] of such imminence that there is a 'clear and present' need for equitable relief to prevent irreparable harm.'" Id. (alterations in original), Ashland Oil, Inc. v. FTC, 409 F. Supp. 297, 307 (D.D.C. 1976). And, finally, the injury must be "beyond remediation." Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006).

### A. The Defendant's Actions Have Already Caused The Manuscript's Publication To Be Delayed And Every Day That Goes By Threatens Future Publication

The founder, president, and publisher of Sentinel, which is set to publish the Plaintiff's Manuscript, has submitted an affidavit addressing the irreparable harm that is occurring due to Defendant's actions/inactions. Exhibit "2". A contract dated December 20, 2018, exists between Sentinel and the Plaintiff and the publication date was set for October 29, 2019. Id. at ¶4. In order to have made that scheduled date, Sentinel needed a cleared manuscript by August 30, 2019. Id. at ¶6. That date has obviously come and gone. The Defendant has deliberately delayed the approval of Plaintiff's Manuscript for nefarious reasons and the Chief, DOPSR, recently stated that "senior leaders have directed my office to hold our response pending the outcome of high-level discussions." Complaint at ¶21; Snodgrass Aff. at ¶19, Exhibit "1-K".

Because Plaintiff and Sentinel have absolutely no desire to harm national security, the Manuscript will not be published until formal approval is received from the Defendant. Exhibit "2" at ¶7; Snodgrass Aff. at ¶23. But the extent of the irreparable harm, which increases every day, was concisely set forth by the publisher:

> That said, because the defendant failed to abide by its legal obligation to timely complete the review of Mr. Snodgrass's manuscript by August 30, 2019, we will now be forced to move the on-sale date back week by week, with a real risk of

> losing retail placement by doing so. If we cannot publish before Thanksgiving, we
> will have to wait until after the 2019 holidays to get meaningful retail placement.
> If we are not able to publish by January 2020, the value of the book will be
> materially, significantly and irreparably diminished since the events recounted
> within will be considerably in the past and it will be difficult to attract media
> attention, especially once political attention is focused on the 2020 primaries.

Exhibit "2" at ¶8. Indeed, "[i]t is an absolute certainty that the longer the review process drags on and the publication of [Plaintiff's] book is delayed, irreparable financial harm will be incurred. Time is truly of the essence here." Id. at ¶9.

Perhaps more importantly, as a matter of law, the existence of irreparable harm is beyond dispute. The DoD has prohibited Plaintiff from exercising his First Amendment rights. "The loss of First Amendment 'freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" Pursuing Am.'s Greatness, 831 F.3d at 511 (internal quotation marks omitted), quoting Mills v. District of Columbia, 571 F.3d 1304, 1312 (D.C. Cir. 2009); see also Elrod v. Burns, 427 U.S. 347, 373– 74 (1976).

The Plaintiff has respectfully demonstrated that irreparable harm has occurred, and continues to occur, because of the Defendant's actions and an injunction against DoD is necessary to stop the harm.

## III.  THE BALANCE OF EQUITIES AND THE PUBLIC INTEREST OVERWHELMINGLY FAVORS GRANTING THE PLAINTIFF PRELIMINARY RELIEF

In determining whether to grant a preliminary injunction "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Winter, 555 U.S. at 24 (internal quotation marks omitted). "In exercising their sound discretion, courts . . . should [also] pay particular regard for the public consequences in employing the extraordinary remedy of injunction." Id. When the government is the party opposing a preliminary injunction, courts analyze the latter two factors as one "because the

government's interest *is* the public interest." <u>Pursuing Am.'s Greatness v. FEC</u>, 831 F.3d 500, 505, 511 (D.C. Cir. 2016), <u>citing Nken</u>, 556 U.S. at 435.

These two factors tilt in favor of Plaintiff. The law is clear that it is unconstitutional for Defendant to prohibit Plaintiff from publishing unclassified information. Given that the D.C. Circuit has acknowledged the obvious that "enforcement of an unconstitutional law is always contrary to the public interest", <u>Gordon v. Holder</u>, 721 F.3d 638, 653 (D.C. Cir. 2013), this Court must respectfully hold that the balance of equities and public interest weighs in Plaintiff's favor.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests this Court to enter an injunction in his favor.

Date: September 3, 2019

Respectfully Submitted,

_____/s/_____

Mark S. Zaid
D.C. Bar #440532
Bradley P. Moss, Esq.
D.C. Bar #975905
MARK S. ZAID, P.C.
1250 Connecticut Avenue, N.W.
Suite 700
Washington, DC 20036
(202) 454-2809
(202) 330-5610 fax
Mark@MarkZaid.com
Brad@MarkZaid.com

Attorneys for Plaintiff