# EXHIBIT 1-K

# MARK S. ZAID, P.C.
## ATTORNEY-AT-LAW

1250 CONNECTICUT AVENUE, N.W.
SUITE 700
WASHINGTON, DC 20036
_____

TELEPHONE: (202) 454-2809
FACSIMILE: (202) 330-5610
www.MarkZaid.com

MARK S. ZAID, MANAGING PARTNER (admitted in CT, DC, MD, NY)
    E-MAIL: MARK@MARKZAID.COM
BRADLEY P. MOSS, PARTNER (admitted in DC, IL)
    E-MAIL: BRAD@MARKZAID.COM
ILANA S. GREENSTEIN, OF COUNSEL (admitted in DC, MD)
    E-MAIL: ILANA@MARKZAID.COM
ANDREW P. BAKAJ, SPECIAL OF COUNSEL (admitted in DC, NJ)
    E-MAIL: ANDREW@MARKZAID.COM

August 23, 2019

VIA E-MAIL

Robert E. Easton
Director, Office of Litigation Counsel
Office of General Counsel
Department of Defense
1600 Defense Pentagon
Washington, D.C. 20301-1600

Re: Guy M. Snodgrass

Dear Mr. Easton:

I am in receipt of your letter dated August 22, 2019, containing questions regarding the contents of my above referenced client's forthcoming book tentatively entitled *Holding the Line: Inside Trump's Pentagon with Secretary Mattis*. You noted you would appreciate a response by August 26, 2019, and I am happy to timely comply with your request. For what it is worth, I encourage the Department to continually maintain a substantive dialogue with me, whether regarding this case or any other I might be handling.

Specifically, you wrote:

> As reflected in prior correspondence, CDR Snodgrass asserts that in preparing the manuscript he relied on "meticulous notes from his seventeen months working with [Secretary] Mattis." Indeed, the manuscript contains numerous detailed quotations of statements that Secretary Mattis and other senior government leaders ostensibly made at meetings that CDR Snodgrass attended. In addition, we understand that CDR Snodgrass regularly took notes in black Moleskine notebooks that he brought to practically every official meeting. To date, however, we have been unable to locate these notebooks or any other written records from

which CDR Snodgrass could have drawn the extensive quotations and first-hand historical accounts purportedly documented in Holding the Line.

As a general matter, as I originally informed you in my letter dated March 27, 2019, when you raised a very similar question, to the best of our knowledge, Mr. Snodgrass is not in possession of any federal records that require return. That said, I will nonetheless address your specific points.

First, Mr. Snodgrass actually never asserted that he relied on "meticulous notes" with respect to the drafting of his manuscript. It was his publisher who made that claim in their initial announcement. Mr. Snodgrass actually corrected that comment to ensure future promotional language accurately stated that the book captures that he relied on his seventeen months of experience instead. The current descriptive language for the book has reflected that correction for some time now. *https://www.amazon.com/Holding-Line-Inside-Pentagon-General/dp/0593084373* ("Drawing on his seventeen months working with Mattis, Snodgrass reveals how one of the nation's greatest generals walked a political tightrope while leading the world's most powerful military.").

Second, to the best of his knowledge, Mr. Snodgrass did not use Moleskine notebooks for the taking of any notes within the Tank or at other meetings. He preferred to use a government provided Skillcraft or another type of widely available spiral notebook. It may be that your source(s) recalled that Mr. Snodgrass did have two Moleskine notebooks that he kept periodically on his desk which was located in General Mattis's front office. The first one, black, contains publicly available transcripts of the General's speeches that Mr. Snodgrass maintained as his personal "go to" source for quotes and messaging alignment. The second one, gray, contains publicly released memos and unclassified letters that Mr. Snodgrass used for the same purpose.

Mr. Snodgrass purchased these notebooks with his own money, printed all the material from his own home, and maintained these as a personal resource. He traveled with these two notebooks since space was a premium and in order to always ensure a handy personal reference was nearby should he need one. These might be the notebooks that someone is recalling and inaccurately assuming to have been used for compiling work-related information.

Given these are personal notebooks and documents, rather than federal records, there is nothing for Mr. Snodgrass to return.

Third, you also wrote that:

> If nothing fitting this description is currently in his possession, we ask that CDR Snodgrass provide the names of the persons to whom he gave the records and that he provide any other information relating to his handling of these records upon his departure so that the Department can locate them. (Of course, the absence of any such records may raise questions regarding the accuracy of the extensive quotations in the manuscript.)

2

With all due respect, there is absolutely no legal requirement imposed upon Mr. Snodgrass that necessitates his response. Whether or not the Department intends to infer something nefarious as to how Mr. Snodgrass managed to recall quotations is frankly not our concern. As I have repeated *ad nauseam*, the only legal remedy the Department possesses with respect to this manuscript is to prevent Mr. Snodgrass from publishing classified information. Obviously, however, Mr. Snodgrass has complied with all prepublication review requirements and no classified information has been identified within his manuscript.

Although we do not need to respond, please be advised that Mr. Snodgrass routinely sanitized his running daily notes and put pages into the burn bag located by his desk on a weekly, if not daily, basis. The front office's noncommissioned officers who were responsible for cleaning after hours and collecting classified materials were routinely present when he would rip pages from his notebook and put them in the burn bag. In particular, there was a Marine gunnery sergeant responsible for evening close-up/cleanout who should generally recall these events.

Additionally, notwithstanding the fact that Mr. Snodgrass does not have any unauthorized federal records in his possession that require return, I should point out, particularly for purposes of ensuring no other concerns exist for other Department of Defense personnel past, present or future, that Mr. Snodgrass does not recall ever receiving guidance regarding DoD Instruction 5015.02. That provision, which you rely upon, requires that "DoD personnel will receive records management training annually in order to understand their responsibilities in managing DoD information as records and how to carry out these responsibilities." While perhaps it is possible Mr. Snodgrass forgot an instance or two where this training occurred over the course of his distinguished twenty-four-year military career, he most certainly does not believe he ever received it during the nearly two years he served as General Mattis's Communications Director and chief speechwriter.

Fourth, during the time Mr. Snodgrass served as part of General Mattis's front office staff there was numerous departures of other officials and civilian employees. Mr. Snodgrass is not aware of any of them leaving behind their notes for "preservation." Ms. Bonita Ruff, a Departmental employee with OSD Public Affairs, and Mr. Justin Mikolay, Mr. Snodgrass' immediate predecessor, notified him that any official documents with General Mattis's handwriting (e.g., speeches, memos, etc) should be preserved for OSD historians. Mr. Snodgrass' office routinely delivered to Ms. Ruff the working copies of General Mattis's drafts and delivered speeches. She and/or the historians should have these in their records or know their whereabouts. Mr. Bill Rivers and Ms. Nicole Magney, who were Mr. Snodgrass' speechwriters, were primarily responsible for this task. If you examine these documents you will note that on many of these preserved copies, Mr. Snodgrass hand wrote the name of the primary speechwriter in the upper right corner.

The day Mr. Snodgrass announced his resignation in July 2018, he departed the Pentagon with nothing more than articles of clothing/footwear, books from his personal library that he had brought in to be used for research, and other personal affects. He cleared/coordinated his departure with CAPT Hal Mohler, U.S. Navy, who was General Mattis's Executive Secretary, told him what he was departing with, to include unclassified (and publicly available) copies of the 2018 National Defense Strategy Mr. Snodgrass had authored, along with his end of tour

3

award, desk plaque, etc. Mr. Snodgrass offered to bring the box over for review. CAPT Mohler politely declined.

Finally, Mr. Snodgrass' use of quotations is in alignment with other recently published memoirs that are based on recollection of events, such as Admiral McRaven, Defense Secretaries Robert Gates, Ashton Carter and Donald Rumsfeld, and many, many others. Need I remind the Department that Mr. Snodgrass was General Mattis's point person for two meetings with the President and with cabinet officials. He personally authored the General's talking points, created the slides, coordinated the room, and collaborated with interagency staffers to prepare and carry out the events. He is intimately familiar with the setting and content of the discussions.

Moreover, as the Communications Director, Mr. Snodgrass had routine and regular access to years of General Mattis's personal notes and journals that the General had retained for decades recounting his experiences in the Marine Corps. If the Department is poised to pursue Mr. Snodgrass for possessing federal records, I can assure you that the first witness I will serve with a subpoena *duces tecum* is General Mattis. The notes retained in his possession included copies of official e-mails, notes taken while serving in various official capacities, and daily calendars/schedules literally affixed into his personal journals.

To end your letter, you wrote that "[t]he issue of the location of these federal records is related to, but distinct from, the review of the manuscript by the Defense Office of Prepublication and Security Review" but I frankly find that hard to believe. It is more than curious, and indeed quite unusual, that the Department of Defense is so aggressively pursuing this matter when it comes to unclassified information.

With that point made, I do trust this satisfactorily and completely addresses the issues raised in your letter. If you believe I missed something, please do let me know.

In closing, I want to bring your attention to an e-mail sent to my client today by George R. Sturgis ("Frosty") wherein it was explicitly acknowledged *in writing* "that senior leaders have directed my office to hold our response pending the outcome of high level discussions." I would respectfully request you inform me why that is and in preparing that response contemplate how your Department will explain that comment to a federal judge when we file Mr. Snodgrass's prepublication challenge lawsuit at the end of next week. I would appreciate receiving your response no later than the close of business, Wednesday, August 28, 2019.

I look forward to hearing from you. Please do not hesitate to contact me if you wish to discuss any of the above.

                                                    Sincerely,

                                                    /s/

                                                  Mark S. Zaid

cc:  Alci Ortiz (<u>via</u> e-mail)
　　　DoD, OGC
　　Guy M. Snodgress (<u>via</u> e-mail)